IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MACK JEFFREY COLE,             )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )      1:13cv868
CAROLYN W. COLVIN,             )
Acting Commissioner of         )
Social Security,               )
                               )
          Defendant.           )

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Mack Jeffrey Cole brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) ("the Act"), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability benefits. The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be granted, Cole's motions will be denied, and this case will be dismissed.

I.  **BACKGROUND**

For thirteen years, Cole worked for the North Carolina Department of Transportation as a general laborer, erecting

roadway signs. (Tr. at 50, 53-54.)[1] In October 2005, as he was at work in a vehicle on the side of the highway, his vehicle was struck by an oncoming tractor-trailer. (Tr. at 50.) The injuries he sustained in that accident precipitated the current disability claim.

He first applied for Disability Insurance Benefits ("DIB") on July 10, 2007, alleging a disability onset date of October 16, 2005, the date of the accident. (Tr. at 204-05.) His application was denied initially (Tr. at 136-39) and on reconsideration (Tr. at 143-150), and Cole requested a hearing *de novo* before an Administrative Law Judge ("ALJ") (Tr. at 151-52). Present at the hearing, held on March 26, 2009, were Cole and his attorney. (Tr. at 90-117.) On July 21, 2009, the ALJ determined that Cole was not disabled within the meaning of the Act. (Tr. at 120-30.) On March 23, 2011, the Appeals Council granted Cole's request for review and remanded the case to the ALJ with specific instructions for further evaluation. (Tr. at 131-35.)

The same ALJ reviewed the case a second time, holding a hearing on January 24, 2012, at which Cole, his attorney, and a vocational expert ("VE") were present. (Tr. at 43-89.) On

---

[1] Transcript citations refer to the Administrative Transcript of Record (Doc. 13 and accompanying exhibits) filed with the Commissioner's Answer (Doc. 12).

March 20, 2012, the ALJ again determined that Cole was not disabled within the meaning of the Act. (Tr. at 23-42.) On April 22, 2013, the Appeals Council denied Cole's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. at 8-13.)

In making the disability determination, the ALJ made the following findings:

> 1. [Cole] last met the insured status requirements of the . . . Act through December 31, 2011.
>
> 2. [Cole] did not engage in substantial gainful activity during the period from his alleged onset date of October 16, 2005 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq*.).
>
> . . .
>
> 3. Through the date last insured, [Cole] had the following severe impairments: organic brain syndrome; left shoulder dislocation status-post surgical repair; and mild degenerative disc disease of the cervical spine and thoracic spine (20 CFR 404.1520(c)).
>
> . . .
>
> 4. Through the date last insured, [Cole] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Cole] had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except [that] he was limited to simple, repetitive work tasks in a low-stress setting with minimal social demands.

(Tr. at 28-30.)

In light of his findings regarding residual functional capacity ("RFC") and the testimony of the VE, the ALJ determined that Cole would not be able to perform his past relevant work as a general laborer for the North Carolina Department of Transportation, which requires heavy physical labor. (Tr. at 35-36.) However, the ALJ found that other jobs available in significant numbers existed in the national economy that Cole could perform given his RFC and vocational abilities, including a dining room attendant, a night business cleaner, and a mail clerk. (Tr. at 36-37.) Accordingly, the ALJ determined that Cole had not been "disabled," as defined in the Act, at any time from October 16, 2005, through the date of his decision, March 20, 2012. (Tr. at 37.)

Cole filed the current action *pro se*, seeking to reverse the ALJ's decision, which was adopted by the Commissioner. (Doc. 2.) The Commissioner answered (Doc. 12) and filed the administrative record (Doc. 13). Cole moved to reverse the decision of the Commissioner. (Docs. 16, 17.) The Commissioner responded by moving for judgment on the pleadings. (Docs. 18, 19.) Cole then moved for judgment on the pleadings, which is in

4

substance a response to the Commissioner's motion. (Docs. 21, 22.) The Commissioner responded. (Doc. 23.)

**II. ANALYSIS**

**A.  Standard of Review**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)) (internal brackets omitted) (setting out the standards for judicial review).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may

5

be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)) (internal brackets omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the] ALJ." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653) (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (emphasis omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments."  Hines, 453 F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.

In addressing this case, the court is mindful that it must construe *pro se* litigants' complaints liberally, thus permitting a potentially meritorious case to develop if one is present. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  However, this does not require that the court become an advocate for the unrepresented party.  Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).  "Only those questions which are squarely presented to a court may properly be addressed."  Id.

9

**B. Merits**

Cole proffers several reasons why the ALJ's decision, as adopted by the Commissioner, should be reversed.

First, he challenges the step five determination, arguing that the VE gave the ALJ erroneous information regarding two of the three jobs he could perform that exist in the national economy. (Doc. 17 at 1-2.) He states that the VE did not provide the ALJ with an exact <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") code for either a night business cleaner or a mail clerk, and so the ALJ may have misunderstood the jobs' requirements and incorrectly determined that he could do those jobs. (<u>Id.</u>) The Commissioner responds that the ALJ needed only to identify one job that Cole could perform that exists in significant numbers in the national economy. (Doc. 19 at 9.) Even crediting Cole's objections, the Commissioner argues, the ALJ identified the job of "dining room attendant," with the correct <u>DOT</u> code, of which there are 2500 jobs in North Carolina. (<u>Id.</u>) Cole replies that he would not be hired as a dining room attendant because he is overqualified and because he has grip and control problems with his hands. (Doc. 22 at 2.)

The Commissioner is correct in that the ALJ only needs to identify one job that Cole can perform, given his RFC and vocational capabilities, that exists in the national economy in

significant numbers. 20 C.F.R. § 404.1566(b). The ALJ determined that Cole could perform the work of a dining room attendant, of which there are 2500 jobs in North Carolina. (Tr. at 36.) The Fourth Circuit has previously found that 110 jobs is not an insignificant number, Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979), so 2500 certainly meets the required threshold. See also Harmon v. Apfel, 168 F.3d 289, 291-92 (6th Cir. 1999) (700 jobs within 75-mile radius of claimant's home is significant number). Even if, as Cole contends, he is overqualified for the job and employers would not hire him, that does not undermine the ALJ's conclusion. At step five, the Commissioner does not have to prove that Cole actually could get hired for the position identified; the Commissioner may find a claimant not disabled even if employers' hiring practices result in the claimant not actually being hired. See 20 C.F.R. § 404.1566(c). Furthermore, the ALJ had substantial evidence from which to conclude Cole did not have difficulties with his hands that would prevent him from being able to perform the job of dining room attendant. (See Tr. at 31-32; Tr. at 329-30 (one neurologist found "no apparent . . . motor deficits"); Tr. at 463-64 (another neurologist found, despite Cole's reports of "dropping things," that Cole had "good 5/5 motor strength bilaterally in arms and legs"). The ALJ had

11

sufficient evidence to conclude that the Commissioner carried her burden at step five.

Second, Cole asserts that the ALJ erred in disregarding the VE's testimony in response to hypotheticals posed by Cole's attorney. (Doc. 17 at 2.) Cole believes the evidence shows he does have the limitations articulated by his attorney in those hypotheticals, and therefore the ALJ was wrong to dismiss them. (Id.) The Commissioner argues that substantial evidence supports the ALJ's findings that Cole does not have those limitations, which means the hypotheticals and resulting testimony are irrelevant. (Doc. 19 at 9-10.)

During the second hearing, Cole's attorney added three limitations to hypotheticals posed to the VE. (Tr. at 81-86.) Those three additional limitations were "more than occasional difficulty interacting appropriately with the general public," "more than occasional difficulty appropriately accepting instructions and responding to criticism," and "a poor ability to maintain focus and pace with tasks." (Id.) Assuming those hypothetical limitations, the VE testified that Cole would not be able to perform one or all of three jobs she had previously identified as possible for Cole to perform. (Id.) The ALJ ultimately disregarded that testimony because he found that Cole did not suffer from those three limitations. (Tr. at 37.) Any

12

testimony based on those hypotheticals, therefore, he found not relevant. (Id.)

The real issue is whether there was substantial evidence from which the ALJ could conclude that Cole did not have those three limitations. The ALJ's own questioning of Cole regarding his daily routine and interactions with family and friends (Tr. at 56-66), the reports of the neurologist Dr. Christopher Connelly (Tr. at 32-35, 461-88), and the reports of two State psychological consultants (Tr. at 520-23, 556-59) all support the ALJ's conclusion that Cole does not suffer from the three specified limitations. Specifically, the State consultants independently found that Cole was capable of "understanding and remembering short and simple instructions" and "maintaining the attention/concentration required for [simple, routine, repetitive tasks]." (Tr. at 522, 558.) They also found that, even though Cole "would likely have some social limitations" and "some difficulty with frustration tolerance," he could function in a low-stress work environment with "minimal social demands." (Id.) The ALJ adopted those findings specifically, determining that Cole could perform light work as long as he was limited to "simple, repetitive work tasks in a low-stress setting with minimal social demands." (Tr. at 30.) Cole's own testimony also supports the ALJ's conclusion that he does not have the

13

three additional limitations: he repairs antique cars, camps occasionally, visits with family and friends, and does household tasks, such as buying groceries, driving, and riding a lawn mower to cut the grass. (Tr. at 56-66.) All of these attest to his ability to interact socially and maintain focus long enough to complete tasks.

Cole relies on Mr. Patrick Clifford's report for support for his position. (Doc. 17 at 2.) Mr. Clifford, a vocational consultant, states in that report that Cole has, among other things, depression, difficulty interacting with others, difficulty with attention span and concentration, difficulty completing tasks, and frequent bouts of frustration and mood swings. (Tr. at 273.) However, the court's review is limited and re-weighing the evidence or substituting its judgment for that of the ALJ is not warranted.[4] Given that there was substantial evidence from which the ALJ could conclude that Cole did not have the hypothetical limitations posed to the VE, the testimony elicited from the VE on those hypotheticals was irrelevant, and the ALJ was correct to disregard it.

---

[4] The court also notes that Mr. Clifford's evaluation is not necessarily at odds with the other doctors who noted that Cole had "moderate" but not "marked" limitation in those areas. Furthermore, the ALJ had discretion to discount Mr. Clifford's analysis, in part because he is not a medical doctor and in part because he only examined Cole by telephone rather than in person, as some of the other doctors did.

Third,[5] Cole argues that the ALJ did not follow the Appeals Council's instruction to further consider his mental limitations according to the "special technique" in 20 C.F.R. § 404.1520a. (Doc. 17 at 2.) The Commissioner contends that the ALJ did comply with the special technique because he adopted the findings of the State consultants. (Doc. 19 at 11-12.)

The ALJ did not mention section 404.1520a explicitly, but he did not need to as long as he followed the steps outlined in that regulation. Section 404.1520a outlines a "special technique" for evaluating the severity of mental impairments. It requires rating the degree of functional limitation in four areas[6] using a four- or five-point scale.[7] If the mental impairment is found to be severe, then the ALJ compares "the medical findings about [the] impairment(s) and the rating of the degree of functional limitation" to criteria of listed impairments. 20 C.F.R. § 404.1520a(d)(2). The ALJ adopted the State psychologists' rating of Cole's mental impairments, finding that he had "moderate" limitations in each of the first

---

[5] This point is included in Cole's "Issue 2" (Doc. 17), but is analytically distinct, so the court has listed it separately.

[6] The four areas are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

[7] The five-point scale is none, mild, moderate, marked, and extreme. It applies to the first three functional areas. The fourth functional area is rated on a four-point scale: none, one or two, three, four or more. 20 C.F.R. § 404.1520a(c)(4).

three functional areas and that he had no episodes of decompensation. (Tr. at 29.) Because the ALJ found Cole's impairments to be severe, he then compared the medical findings regarding his impairments and the ratings of Cole's functional limitations to listed impairments, specifically 12.02 (organic mental disorders) and 12.04 (affective disorders). (Id.) As the Appeals Council instructed, the ALJ followed the special technique in section 404.1520a; he again found Cole's impairments did not meet or medically equal a listed impairment. Cole proffers no basis for this court to disturb that finding.[8]

Fourth, Cole asserts that the ALJ may have been biased against Mr. Clifford and that the other doctors may have been biased because they were compensated for their reports. (Doc. 17 at 2; Doc. 22 at 2.) He also asserts that the ALJ erred in discounting Mr. Clifford's opinion because Mr. Clifford only interviewed Cole telephonically. (Id.) Because Cole presents no evidence of bias and rests on naked assertions, his claims regarding the ALJ and the other doctors do not provide grounds

---

[8] Cole objects to the ALJ's reliance on evidence of his daily living activities, which is one of the four areas rated for functional limitation. (Doc. 22 at 2.) Cole states that he lived a more active life before his accident and that he has experienced "very little improvement" since his most recent doctor's visit. (Id.) The question, however, is not whether Cole is less active than before his visit, but to what degree his daily living activities are functionally limited now. Two State psychological consultants determined that he had "moderate" limitations in that area (Tr. at 29), and Cole has cited no record evidence rebutting that finding.

16

for altering the ALJ's judgment. Further, the ALJ was justified in giving more weight to reports from doctors who had actually seen and physically examined Cole over reports from doctors who simply interviewed him over the phone. See 20 C.F.R. § 404.1527(c)(1).

Fifth, Cole argues that the ALJ wrongfully discounted his subjective reports of pain and other limitations. (Doc. 17 at 3.) However, the ALJ conducted a comprehensive analysis of the symptoms Cole reported experiencing, and he compared Cole's subjective reports with objective medical evaluations. The ALJ considered the fact that, at the time of the hearing, Cole had not sought regular medical treatment or pain medication for his disability-related injuries for five years. (Tr. at 30-35.) The ALJ considered all the evidence and applied the correct legal standard. (Tr. at 30); Craig, 76 F.3d at 594-95 (describing the two-step process for evaluating a claimant's pain or other symptoms). It is not the purview of this court to reject or review the ALJ's credibility judgments regarding Cole's reports of pain.[9]

---

[9] Cole also disputes the status of his shoulder disability, noting that Dr. Mark Jasmine gave him a 10% disability rating in his shoulder. (Doc. 22 at 3.) While that information is correct (Tr. at 332), the evaluation occurred in June 2006, soon after Cole had undergone shoulder surgery, as the ALJ noted, and Dr. Jasmine specifically noted that Cole should "discontinue physical therapy" for his shoulder and could probably "return to work [at the end of June] with regular

17

Sixth, Cole contends that the information before the ALJ was incomplete and inaccurate. (Doc. 17 at 3-4.) Specifically, he questions the absence of (1) a questionnaire about his health that his friend allegedly completed and (2) the dictation of notes from his emergency room visit in October 2005. (Id.; see also Doc. 22 at 4-5.) The original was lost; it was then re-dictated. Cole believes the original dictation is important because there is a discrepancy in the medical reports as to how many seizures Cole had in the emergency room. (Doc. 17 at 3-4.) The Commissioner contends that there is no evidence to suggest that Cole's friend ever returned or submitted the questionnaire. (Doc. 19 at 19.) As to the dictation, the Commissioner reports that it was lost by the hospital, not by the Commissioner, and that there is no evidence that the number of Cole's seizures immediately following the accident affected the evaluation of his current disability claim. (Id.)

Cole alleges but provides no evidence that his friend ever completed or returned to the Social Security Administration ("SSA") a questionnaire on Cole's health. His citation to the administrative transcript merely establishes that the SSA was in contact with "Junior Coley" about being the responsible party

---

duties." (Tr. at 360.) The ALJ reviewed the subsequent evidence and concluded it "did not show [Cole] has required any regular treatment or pain medication for his left shoulder impairment." (Tr. at 32.) That finding is supported by the evidence.

for Cole's medical exam and that a questionnaire was sent to Coley on June 1, 2007. (Doc. 17 at 3-4 (citing Tr. at 526-27).) Unsworn allegations and hearsay statements as to Coley's actions in response to the questionnaire (Doc. 22 at 4) are not sufficient grounds for disturbing the ALJ's conclusions. As to the dictation, there is indeed a discrepancy in the medical reports as to how many seizures Cole had immediately following his accident. (<u>Compare</u> Tr. at 279 <u>with</u> Tr. at 282.) However, the re-dictation Cole complains of is *more favorable* to him than his hospital discharge summary. (<u>See</u> Tr. at 279 (October 18, 2005 discharge summary) (noting one seizure); Tr. at 282 (November 3, 2005 re-dictation of notes from October 16, 2005) (noting 2-3 seizures).) And while the number of seizures might be indicative of how severe the accident was, the ALJ was only charged with determining whether Cole was disabled from October 16, 2005, until December 31, 2011, not how severe Cole's accident was. In other words, the question is not how bad the initial injury was, but rather how badly the injury affected Cole's abilities. Cole's objection is insufficient to disturb the ALJ's disability determination.

Seventh, and finally, Cole objects to the ALJ disregarding Dr. Alexander Manning's exam. (Doc. 17 at 4.) However, the ALJ did rely on Dr. Manning's report. (Tr. at 33 (citing Exhibit

12F).) To the extent that Cole is attempting to argue that Dr. Manning's report supports a finding of disability – an argument that Cole does not make or develop – the court notes that the relevant question at this stage of review is not whether Cole is disabled, but rather whether the ALJ had substantial evidence to conclude that Cole was not disabled. Cole's argument does not address the fact that the ALJ had substantial evidence supporting his findings.

**III. CONCLUSION**

For the reasons stated, the court finds that the factual findings of the ALJ, which were adopted by the Commissioner, are supported by substantial evidence and were reached through application of the correct legal standard.

IT IS THEREFORE ORDERED that Cole's motion to reverse the Commissioner's decision (Doc. 16) and his motion for judgment on the pleadings (Doc. 21) are DENIED, the Commissioner's motion for judgment on the pleadings (Doc. 18) is GRANTED, and this action is DISMISSED.

                                                  /s/   Thomas D. Schroeder
                                        United States District Judge

August 14, 2014